## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **BLAKE LEJEUNE** | * | **CIVIL ACTION NO.** |
| **CALVIN J. PARKER** | * | |
| | * | |
| **VERSUS** | * | **SECTION** |
| | * | |
| **TURNER INDUSTRIES GROUP, LLC** | * | |
| **and CHEVRON ORONITE COMPANY,** | * | **MAGISTRATE** |
| **L.L.C.** | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### COMPLAINT AND JURY DEMAND

**COME NOW** Plaintiffs, Blake Lejeune ("Mr. Lejeune") and Calvin J. Parker, ("Mr. Parker"), collectively referred to as "Plaintiffs," through undersigned counsel, and file this complaint to obtain full and complete relief and to redress the unlawful employment practices suffered by them as described herein.

### I. PRELIMINARY STATEMENT

1.

This action for employment discrimination seeks declaratory, injunctive and equitable relief, back pay, reinstatement (or in lieu thereof, front pay), compensatory damages, punitive damages, attorney's fees, prejudgment interest, and costs for racial discrimination (including reverse race discrimination) and retaliation, against Turner Industries Group, LLC ("Turner") and Chevron

-1-

Oronite Company, L.L.C. ("Chevron") in its treatment of Mr. Lejeune and Mr. Parker, including terminating their employment.

## II. JURISDICTION

2.

This action is brought pursuant to 42 U.S.C. § 1981, Title VII of the Civil Rights act of 1964, 42 U.S.C. § 2000e et. seq. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 because the actions arise under the laws of the United States.

3.

Mr. Lejeune has received his right-to-sue letter from the EEOC. 42 U.S.C. § 2000e-5(f).

4.

Declaratory, injunctive, and equitable relief is sought pursuant to 42 U.S.C. 2000e-5(g).

## III. VENUE

5.

This action properly lies in the Eastern District of Louisiana because Plaintiffs were terminated from their employment with Defendant while employed in the Eastern District of Louisiana.

## IV. PARTIES

6.

Plaintiff Mr. Lejeune, is a Caucasian male, a United States citizen and a resident of the Eastern District of Louisiana.

7.

Plaintiff Mr. Parker, is an African American male, a United States citizen and a resident of

the Eastern District of Louisiana.

8.

Turner, upon information and belief, is a Louisiana corporation authorized to do and doing business within the confines of the Eastern District of Louisiana.

9.

Chevron, upon information and belief, is a foreign corporation authorized to do and doing business within the confines of the Eastern District of Louisiana.

## V. FACTS

10.

Sean Blackwell ("Mr. Blackwell") is Chevron's Maintenance Foreman.

11.

Joe Thibodeaux ("Mr. Thibodeaux") is a Turner Foreman.

12.

Bubby Trahan ("Mr. Trahan") is a Turner Site Manager.

13.

In June of 2010, Mr. Lejeune complained to Jay Damico ("Mr. Damico"), a Chevron Union Machinist, that he observed significant racial discrimination in the work place.

14.

These discriminatory actions that Mr. Lejeune complained of included, but were not necessarily limited to, the fact that Mr. Trahan caused the racially discriminatory and hostile environment as follows: (1) the labor crew consisted of all African-American males and the management positions were all Caucasian males that do not have nearly the same time or experience

-3-

in the workplace; (2) several well-qualified and experienced black employees have been denied top

pay in their craft for being unable to obtain an NCCER card, yet many other white employees making

top pay in their craft do not have NCCER card; (3) that he has heard Mr. Trahan say, on several

occasions, derogatory things about black people.

15.

Nick Dinet ("Mr. Dinet") and Herman Carcamo ("Mr. Carcamo") were fired from the

Machinist Crew.

16.

Of the eight (8) machinists in the Machinist Crew, Mr. Dinet and Mr. Carcamo were the only

minorities. No reason was given for their release. Yet, it was obviously due to their race.

17.

Mr. Trahan said "typical nigger" quite often.

18.

Mr. Trahan hired "turn around" hands for a job that was supposed to last one month.

19.

After the job was over, he kept some of the "turn around" hands that he knew and laid off

the African American guys that he did not like simply because they were African American.

20.

These men were Lloyd Green ("Mr. Green"), Darryl Sylve ("Mr. Sylve"), Mr. Dinet and Mr.

Carcamo.

21.

Mr. Trahan criticized people behind their back, including criticizing them because of their

-4-

race.

22.

Mr. Trahan created a very tension filled work place.

23.

Mr. Trahan fired Mr. Parker for briefly lying down on a bench, but obviously not sleeping, during a scheduled break, when he himself (Trahan) had been seen by several people sleeping while not on a break before the lunch period.

24.

Mr. Parker was in charge of the Steam and Condensation Group for the Fabrication Division, which involved fixing leaking pipes.

25.

On July 16, 2010, it was quite hot in the plant and Mr. Parker had worked since early in the morning fixing the steam in an area called special chemicals.

26.

At the 9:30am break, Parker was soaking wet with perspiration so he did not go into the air conditioned lunch room because it was too cold.

27.

At that time, he stayed in the shop and laid back on the bench just to rest himself for a couple of moments.  He was obviously not sleeping.

28.

Mr. Blackwell, the Chevron maintenance foreman, stood over him and accused him of being asleep.

29.

This was obviously not true and Mr. Parker explained that he was lying down just to get his composure during his scheduled break.

30.

Later in the day, Mr. Thibodeaux, the Turner Foreman told him that Chevron manager, Mr. Blackwell, told Thibodeaux to send Mr. Parker home.

31.

Mr. Parker immediately spoke to Mr. Blackwell who said he did not tell Mr. Thibodeaux that.

32.

In any event, it was near the end of the day and Mr. Parker went home at about 3:30pm, which is the normal end of the day time shift.

33.

When Parker came to work on Monday, July 19, 2010, Mr. Trahan said, "Why are you here? I sent you home and walked you out of the plant. And I was to call you to discuss after I discussed the matter with Mr. Blackwell."

34.

At 10:30pm that night, Mr. Trahan called Parker and said, "you were terminated for sleeping on the job."

35.

This is one of the same issues that were complained about by Mr. Lejeune. Mr. Parker had been terminated for racially discriminatory reasons, as many white workers lay back, and some

-6-

actually fall asleep, even at times when they were not scheduled on break, including Mr. Trahan.

36.

In any event, Plaintiff Parker alleges that he was terminated due to racial discrimination and in retaliation for his name being brought up by Mr. Lejeune concerning racial discrimination that he had been suffering.

37.

Mr. Parker worked at a Chevron plant for 25 years and had never been written up.

38.

Upon information and belief, defendants utilize a progressive discipline policy and evaluation policy which includes: (1) verbal warnings to identify problems; (2) written warnings, including a formal meeting with the employee, to establish clear performance expectations to correct the problems; (3) an opportunity for the employee to present his or her case; and (4) termination, if the problems remain unresolved after the above steps.

39.

Neither Mr. Lejeune or Mr. Parker have been disciplined for improper conduct or performance.

40.

In August of 2010, Mr. Lejeune complained to Patty Rodriguez ("Ms. Rodriguez"), Chevron's Internal Affairs person, about race discrimination as described herein.

41.

Shortly thereafter, Mr. Lejeune was given a hair drug test.

42.

Mr. Lejeune states that he is extremely health conscious, working out and, even at times, functioning as a personal trainer.

43.

Mr. Lejeune did not take any kind of drugs either illegal or prescription.

44.

In any event, on August 10, 2010, Mr. Lejeune was told that he was being fired due to a positive drug test.

45.

However, on August 11, 2010 – the day after he was terminated – Mr. Lejeune went, at his own expense, to Quest Diagnostics Laboratories and gave hair follicles for a drug test. The results of that drug test were completely negative for any kind of drug either illegal or prescription.

46.

Mr. Lejeune's attitude is excellent, his personal and safety habits are also excellent. His knowledge and ability is excellent, his attendance is excellent and he was advised in this directive that the Chevron Human Resource Manager had terminated his employment and no reason was given for his release.

47.

Plaintiffs allege that under federal discrimination law and under concurrent Louisiana employment discrimination law, a protected employment relationship exists between Plaintiffs and Chevron, including, but not limited to, the fact that Chevron had the right to control Plaintiffs' conduct while employed at its plant. That is, Chevron exercised its right to demand that Turner

terminate its employees working at the site, and Chevron also supervised and set work procedures and schedules for Plaintiffs and other employees of Turner. Thus, Plaintiffs allege that Turner and Chevron are joint employers under Federal employment discrimination law.

48.

Accordingly, Plaintiffs assert that both Turner and Chevron may be found jointly liable to Plaintiffs for prohibited discrimination under federal law and concurrent Louisiana employment discrimination law.

49.

Plaintiffs allege that Turner and Chevron both have more than 500 employees.

## PUNITIVE DAMAGES

50.

As a direct result of the above acts of Mr. Lejeune and Mr. Parker, have suffered pain and suffering, emotional distress, mental anguish, loss of reputation, embarrassment, and humiliation.

51.

Plaintiffs were terminated because of race and in retaliation for complaining about race discrimination.

52.

The harassment suffered by plaintiffs affected a term, condition, or privilege of their employment.

53.

Defendants knew or should have known that the harassment and retaliation against Mr. Lejeune because of his participation in race discrimination complaints would violate his federally

protected rights. Further, Defendants knew or should have known that the harassment against Mr.
Parker because of his race and retaliation for being the subject of Mr. Lejeune's race discrimination
complaints, as having been discriminated against, would violate his federally protected rights.

54.

The acts of defendants were practiced with malice and/or reckless disregard to Plaintiffs'
federally protected rights.

## VI. CAUSES OF ACTION

55.

By the above acts Defendants have violated Title VII of the Civil Rights Act of 1964 and 42
U.S.C. § 1981 by terminating Mr. Lejeune and subjecting Mr. Lejeune to harassment based on his
race, and by retaliating against Mr. Lejeune for complaining about race discrimination.

56.

By the above acts Defendants have violated 42 U.S.C. § 1981 by terminating Mr. Parker and
subjecting Mr. Parker to harassment based on his race, and by retaliating against Mr. Parker for being
the subject of Mr. Lejeune's complaints regarding race discrimination.

## VII. PRAYER FOR RELIEF

57.

WHEREFORE, Plaintiffs pray that this Court:

a.   Declare that the acts and practices of the Company complained of herein are in
     violation of United States law;

b.   Enjoin and permanently restrain the Company from engaging in such unlawful
     practices;

-10-

c.      Award Plaintiffs all earnings they did not receive because of the actions of the Company, including but not limited to back pay, pre-judgment interest, bonuses, pension, and any other lost benefits;

d.      Reinstate Plaintiffs to the position they would have occupied but for the Company's treatment, or in lieu thereof, award Plaintiffs front pay.

e.      Award Plaintiffs compensatory damages for pain and suffering, emotional distress, mental anguish, loss of reputation, embarrassment, and humiliation;

f.      Award Plaintiffs punitive damages;

g.      Award Plaintiffs costs, expert witness fees, and attorney's fees;

h.      Grant Plaintiffs any such relief as this Court may deem just and proper.

## VIII. JURY DEMAND

58.

Plaintiffs demand trial by jury of all issues in this action.

Respectfully Submitted,

JAMES L. ARRUEBARRENA (#22235)
James L. Arruebarrena, LLC
1010 Common Street, Suite 3000
New Orleans, Louisiana 70112
Telephone (504) 525-2520
Facsimile (504) 581-7083

And

RACHEL MARTIN-DECKELMANN (#32195)
James L. Arruebarrena, LLC
1010 Common Street, Suite 3000
New Orleans, Louisiana 70112
Telephone (504) 212-4166
Facsimile (504) 581-7083

**ATTORNEYS FOR PLAINTIFFS,
BLAKE LEJEUNE AND CALVIN PARKER**

**PLEASE SERVE:**

**Turner Industries Group, L.L.C.**
*Through its agent for service of process:*
Mr. L. J. Griffon, Jr.
8687 United Plaza Blvd.
Baton Rouge, LA 70809

**Chevron Oronite Company, L.L.C.**
*Through its agent for service of process*:
Corporation Service Company
320 Somerulos Street
Baton Rouge, LA 70802-6129

-12-