UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


BLAKE LEJEUNE, ET AL.                    CIVIL ACTION


VERSUS                                   NO: 11-1238


TURNER INDUSTRIES GROUP, LLC,            SECTION: J(5)
ET AL.


### ORDER AND REASONS

This matter is before the Court on Defendant Turner Industries
Group, LLC's Motion for Summary Judgment on the claims of Calvin
Parker **(Rec. Doc. 25)**.  Parker opposes the motion.


### PROCEDURAL AND FACTUAL BACKGROUND

This employment discrimination claim arises from an employer's
decision to terminate one of its employees.  Defendant Turner
Industries Group, LLC ("Turner") maintained a maintenance service
contract with Defendant Chevron Oronite Company, LLC ("Chevron"),
under which Turner's employees were assigned to work at Chevron's
Oak Point plant in Belle Chasse, Louisiana.

Plaintiff Calvin Parker was first hired by Turner in 2006 and
assigned to work at the Oak Point facility.  After approximately
four years of employment, on July 23, 2010, Parker was terminated
by Turner's Site Superintendent, Jack "Bubby" Trahant, after a

Chevron foreman took pictures of him allegedly sleeping on a bench during one of his regularly scheduled morning breaks, in violation of Turner's written policies.  Parker denies that he was sleeping and maintains instead that he was only laying down to "cool off" because he had been working in the plant's steam and condensate area, which is reportedly very hot.

On May 27, 2011, Parker filed the instant lawsuit, alleging that Turner and Chevron had subjected him to racial harassment and had eventually terminated him because of his race, in violation of 42 U.S.C. § 1981.[1]  Defendants each filed an answer, denying the allegations and asserting various affirmative defenses. Subsequently, during the course of discovery, it came to light that Parker and his wife had filed a Chapter 13 bankruptcy petition in the United States Bankruptcy Court for the Eastern District of Louisiana on July 3, 2010, approximately three weeks before his termination.  Upon further investigation, Defendants' counsel reportedly discovered that Parker had failed to disclose his pending lawsuit to the bankruptcy court, as required under the Bankruptcy Code.

Shortly thereafter, Defendants jointly filed the instant motion for summary judgment, in which they contend that the

---

[1]  Parker originally filed suit with one of his co-employees, Blake Lejeune, whom Turner had terminated in a separate incident.  Lejeune subsequently settled with both Turner and Chevron and was dismissed from the suit.  See Rec. Docs. 71; 72.

doctrine of judicial estoppel now bars Parker from asserting these undisclosed claims. After filing an opposition, Parker subsequently amended his bankruptcy property schedules on February 3, 2012 to include the claims asserted in this lawsuit. While the summary judgment motion was pending, Parker settled his claims against Chevron, leaving only his claims against Turner at issue in the motion.

## LEGAL STANDARD

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2); Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986); Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994). A fact is "material" where, under applicable law, it may alter the outcome of the lawsuit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Ameristar Jet Charter, Inc. v. Signal Composites, Inc., 271 F.3d 624, 626 (5th Cir. 2001). A dispute is genuine when a reasonable finder of fact could resolve the issue in favor of either party, based on the evidence before it. Anderson, 477 U.S. at 250; TIG Ins. Co. v. Sedgwick James of Wash., 276 F.3d 754, 759 (5th Cir. 2002).

When assessing whether a dispute as to any issue of material

fact exists, a court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co., 530 F.3d 395, 398 (5th Cir. 2008). All reasonable inferences should be drawn in favor of the nonmoving party, but a non-movant cannot defeat summary judgment with conclusory allegations or unsubstantiated factual assertions. Little, 37 F.3d at 1075. Ultimately, a court must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." Delta, 530 F.3d 399.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. See Celotex, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. Id. at 324. The non-movant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial. See, e.g., id. at 325; Little, 37 F.3d at 1075; Isquith for and on Behalf of Isquith v. Middle S. Utils., Inc., 847 F.2d 186, 198 (5th Cir. 1988), cert. denied, 488 U.S. 926 (1988).

**DISCUSSION**

Judicial estoppel is a doctrine that prevents a party from assuming inconsistent positions in litigation.  <u>Kane v. Nat'l Union Fire Ins. Co.</u>, 535 F.3d 380, 385 (5th Cir. 2008)(per curiam).  The doctrine's primary purpose is "to protect the integrity of the judicial process by preventing parties from playing fast and loose with the courts to suit the exigencies of self interest."  <u>Id.</u> (quoting <u>In re Coastal Plains, Inc.</u>, 179 F.3d 197, 205 (5th Cir. 1999)).  Generally, judicial estoppel is invoked where "intentional self-contradiction is being used as a means of obtaining unfair advantage in a forum provided for suitors seeking justice."  <u>In re Coastal Plains, Inc.</u>, 179 F.3d at 205 (quoting <u>Scarano v. Central R.R. Co.</u>, 203 F.2d 510, 513 (3d Cir. 1953)).  "Because the rule is intended to prevent improper use of judicial machinery, judicial estoppel is an equitable doctrine invoked by a court at its discretion."  <u>New Hampshire v. Maine</u>, 532 U.S. 742, 750 (2001) (internal quotation marks and citations omitted).

The Fifth Circuit has recognized three distinct elements which must be satisfied in order for judicial estoppel to be justifiably applied: "(1) the party's position must be clearly inconsistent with its previous one; (2) the court must have accepted the party's earlier position; and (3) the non-disclosure must not have been inadvertent."  <u>Kane</u>, 525 F.3d at 386 (quoting <u>In re Coastal Plains, Inc.</u>, 179 F.3d at 205).

### i. Is Parker's Position Clearly Inconsistent with His Previous Position?

Under the Bankruptcy Code, substantially all of a debtor's existing assets, including pending and potential claims, vest in the bankruptcy estate upon the filing of a voluntary bankruptcy petition. Id. at 385 (citing 11 U.S.C. § 541(a)(1)). In a Chapter 13 bankruptcy, the bankruptcy estate also encompasses legal claims and causes of action that accrue "after the commencement of the [bankruptcy] case but before the case is closed, dismissed, or converted to" a Chapter 7, 11, or 12 bankruptcy proceeding. 11 U.S.C. § 1306(a)(1) and § 541(a)(1). A debtor is therefore under a continuing duty to promptly disclose the existence of all such claims to the bankruptcy court. Kane, 535 F.3d at 384-85 (citing 11 U.S.C. § 521(1); In re Coastal Plains, Inc., 179 F.3d at 207-08)). This duty continues to apply even after the bankruptcy court has confirmed a bankruptcy plan. Gilbreath v. Averitt Exp., Inc., No. 09-1922, 2010 WL 4554090, at *7 (W. D. La. Nov. 3, 2010); Wright v. Sears Roebuck & Co., No. 09-1498, 2010 WL 6032803, at *3 (W.D. La. Oct. 19, 2010). The Fifth Circuit has explained that the "importance of this disclosure duty cannot be overemphasized." In re Coastal Plains, Inc., 179 F.3d at 208.

Here, because subsequently amended his property schedule to include his employment discrimination claims, Parker submits that he is no longer asserting a position in one legal position that is contrary to a position asserted in another. The Court is not

persuaded, however, as his argument is contrary to the balance of authority in this circuit.

Generally, a debtor must disclose a potential claim to the bankruptcy court *prior* to filing suit in order to avoid taking an inconsistent position in the two proceedings.  See <u>Henry v. Kansas City S. Ry. Co.</u>, No. 10-0469, 2010 WL 3613795, at *4 (W.D. La. Sep. 8, 2010) ("Furthermore, under the rules of judicial estoppel, Plaintiff was required to amend his schedule of assets **before** filing suit against Defendant.") (emphasis in original) (citing <u>Burnes v. Pemco Aeroplex, Inc.</u>, 291 F.3d 1282, 1288 (11th Cir. 2002); <u>see also</u> <u>Wright</u>, 2010 WL 6032803, at *6 (finding that first and second estoppel elements were met because the debtor failed to disclose her potential claim to the bankruptcy court before filing suit).

Consequently, even where a claim accrues after a bankruptcy petition has been filed, a debtor cannot "cure" his initial failure to disclose it to the bankruptcy court by subsequently amending his property schedules.  In <u>Cargo v. Kansas City Southern Railway Co.</u>, 408 B.R. 631, 646 (W.D. La. 2009), for example, the court held that a Chapter 13 debtor was judicially estopped from asserting an employment discrimination claim against her former employer, despite the fact that the debtor had subsequently amended her bankruptcy filings to include the disputed claim.  Noting the three years that had passed between the filing of her lawsuit and the amendments to her bankruptcy property schedules, the court

concluded that the subsequent amendment did not operate to cure her failure to disclose the claim to the bankruptcy court.  Id. at 646-47.  Accordingly, and because the other two estoppel elements were otherwise met, the court held that the debtor was precluded from asserting the undisclosed claim.  Id.; see also DeLeon v. Comcar Indus., Inc., 321 F.3d 1289, 1291-92 (11th Cir. 2003)(finding that a plaintiff-debtor had taken an inconsistent position by failing to amend his bankruptcy schedules to include an employment discrimination claim against his former employer until after the employer raised the issue in its motion to dismiss his claim based on judicial estoppel).

Here, like the debtors in the aforementioned cases, the undisputed evidence shows that Parker assumed an inconsistent position by failing to disclose his claims to the bankruptcy court, notwithstanding his subsequent amendments to his property schedule.  Parker filed a voluntary petition for Chapter 13 bankruptcy protection on July 3, 2010.  His employment was terminated twenty days later on July 23, 2010, and he met with an attorney regarding a potential lawsuit against Turner and Chevron on October 15, 2010.  Subsequently, on May 27, 2011, Parker filed the instant lawsuit.  Notwithstanding his continuing duty to disclose this claim to the bankruptcy court, he did not disclose the claim before filing suit and did not amend his bankruptcy filings until February 3, 2012, several months after Chevron and

8

Turner raised the issue in the instant motion.

Furthermore, and contrary to Parker's arguments, it is immaterial that he simply neglected to update his asset schedules, as opposed to making affirmative misrepresentations to the bankruptcy court. The law imposes an affirmative and ongoing duty to disclose all pending claims, and by virtue of his failure to do so until the issue was raised by his adversaries, Parker is deemed to have assumed an inconsistent position in this Court. Cargo, 408 B.R. at 646; see also In re Superior Crewboats, Inc., 374 F.3d 330, 335 (5th Cir. 2004) (explaining that a debtor's failure to disclose a post-petition personal injury claim was "tantamount to a representation that no such claim existed"). Accordingly, the first element for application of the doctrine of judicial estoppel is clearly met.

### ii. *Did the Bankruptcy Court Accept Parker's Inconsistent Position?*

The bankruptcy court must also have "accepted" Parker's previous inconsistent position. Kane, 535 F.3d at 386. The "acceptance" element requires "that the first court has adopted the position urged by the party, either as a preliminary matter or as part of a final disposition." In re Superior Crewboats, 374 F.3d at 335 (quoting In re Coastal Plains, 179 F.3d at 206). This requirement is satisfied where a bankruptcy court has confirmed a debtor's bankruptcy plan in reliance on the veracity of his

9

asset schedules.  <u>Jethroe v. Omnova Solutions, Inc.</u>, 412 F.3d 598, 600 (5th Cir. 2005).

Here, Parker argues that this element is not met.  He claims to have been completely unaware of the potential for a lawsuit against Turner and Chevron until he had the opportunity to meet with an experienced employment discrimination attorney on October 15, 2010, which was approximately two weeks *after* the bankruptcy court confirmed his Chapter 13 plan.  Parker therefore maintains that the bankruptcy court's reliance upon his initial asset schedule has no bearing on the estoppel question.

It is clear, however, that Parker's knowledge of his *legal rights* is not what is determinative for purposes of the duty to disclose.  Under binding Fifth Circuit precedent, a "debtor need not know all the facts or even the legal basis for the cause of action; rather, if the debtor has enough information . . . prior to confirmation to suggest that it may be a possible cause of action, then it is a 'known' cause of action such that it must be disclosed."  <u>In re Coastal Plains</u>, 179 F.3d at 208 (quoting <u>Youngblood Group v. Lufkin Fed. Sav. & Loan Ass'n</u>, 932 F. Supp. 859, 867 (E.D. Tex. 1996)).  Thus, a plaintiff is duty-bound to disclose a claim any time that he is aware of the *facts* giving rise to a potential cause of action, irrespective of his knowledge of the law.  <u>Jethroe</u>, 412 F.3d at 601; <u>see also</u> <u>Henry</u>, 2010 WL 3613795, at *4 (rejecting plaintiff-debtor's argument that he had

10

no duty to disclose claim because he was unaware of his injuries prior to the confirmation of his bankruptcy plan, where plaintiff-debtor failed to disclose claim to the bankruptcy court prior to filing suit).[2]

Here, the record indisputably shows that Parker had knowledge of the facts giving rise to his claim prior to the confirmation of his bankruptcy plan.  The Court confirmed and entered his Chapter 13 plan on September 29, 2012, over two months after his allegedly discriminatory termination, the facts of which Parker was admittedly aware.  Furthermore, as Turner points out, and as Parker does not dispute, the record also shows that Parker had knowledge of many of the alleged incidents of racial harassment and discrimination of which he now complains prior to his termination.  See Cargo, 408 B.R. at 646 (finding that plaintiff-debtor had duty to disclose employment discrimination claim where she had knowledge of racially derogatory remarks underlying her claim prior to the time that she filed bankruptcy).  For instance, Parker testified that he was previously discriminated against by his supervisor when he was repeatedly passed over for vacant foreman positions, despite his numerous inquiries and

---

[2]   Similarly, a plaintiff's lack of awareness of his statutory disclosure duty does not preclude application of judicial estoppel.  See In re Coastal Plains, 179 F.3d at 212.

applications.[3]  Parker also testified that he witnessed and was

thus aware of other acts of discrimation against African

Americans during the tenure of his employment with Turner.[4]

---

   [3]  <u>See</u> Rec. Doc. 67, p. 11 ("Parker had been at the Oak
Point facility for twenty five years and had never become a
foreman, even though he inquired about and applied for a foreman
position several times.  Parker asked his supervisor, Trahant,
about open foreman positions numerous times and was told the same
thing each time, "I'll get back to you." Trahant never got back
to Parker."); <u>see also</u> Rec. Doc. 47-2, p. 22.

   [4]  <u>See</u> Rec. Doc. 67, p. 11 ("Parker experienced rampant race
discrimination during his tenure at the Oak Point facility.
Parker experienced race discrimination 'all the time' . . .
Parker also noticed several African American employees who had
been at the facility for twenty or twenty five years, who were
never promoted; however, Caucasian employees would begin a job
and fast track their way to a promotion regularly.  Further,
Parker himself witnessed an incident at Oak Point wherein two
individuals [Craig Johnson, an African American and Joe
Thibodeaux, a Caucasian] got into a physical altercation after
the Caucasian referred to the African American by the "N" word.
Both men were terminated; however, Thibodeaux was hired back by
Turner as a foreman once the contract rolled over.  Johnson
applied several times to get hired back on at Oak Point and was
never hired again.  Furthermore, the entire labor crew [whose job
consisted of picking up garbage] was comprised of only African
Americans and the only foreman position held by an African
American was the foreman over that very same labor crew."); <u>see
also</u> Rec. Doc. 47-2, p. 23:

   **Q:**  Any other instances of race discrimination that
   you saw at the Chevron plant by anybody to anybody?
   **A.** By Bubby Trahant.
   **Q.** And what was that?  Well, one the operators' son
   needed a job. They didn't have any openings in the
   maintenance department. Bubby Trahant hired him on as
   a laborer, and from the first day he started he took
   the black guy off the backhoe digger and put Tim
   Chris' son on the backhoe digger.
   **Q.** And Tim Chris is
   **A.** White.

Accordingly, even in the light most favorable to Parker, at most the record shows that Parker was unaware of his legal rights, or perhaps unaware of the precise legal basis for his claims, prior to the confirmation of his bankruptcy plan.[5]  The undisputed facts show that Parker was aware of enough information prior to the confirmation of his Chapter 13 plan to suggest that he may have a possible cause of action against Turner, thereby triggering his statutory duty of disclosure.  Parker failed to disclose this potential claim to the bankruptcy court until Turner and Chevron raised the issue in this proceeding, which was almost a year and a half after the bankruptcy court confirmed his plan.  Accordingly, the Court finds that the bankruptcy court "accepted" his representation when it confirmed his bankruptcy plan in reliance on his property schedules on September 29, 2010, and the second element for judicial estoppel is therefore satisfied.

### iii.  Was Parker's Non-Disclosure Inadvertent?

The final element of judicial estoppel requires that the

---

**Q.** - white?
**A.** And the guy didn't get in the tank not one time. He didn't believe in putting a white guy to do a labor man's job.

[5]  See, e.g., Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment, Rec. Doc. 46, p. 8 ("While Parker was aware that he was being discriminated against while employed at Turner and Chevron, he was not aware of the potential for a lawsuit until after his termination and after he consulted with undersigned counsel, an experienced employment discrimination attorney.").

party's non-disclosure was not inadvertent.  In the context of judicial estoppel, a debtor's failure to satisfy his statutory duty of disclosure is only "inadvertent" where "the debtor either lacks knowledge of the undisclosed claims _or_ has no motive for their concealment."  <u>In re Coastal Plains, Inc.</u>, 179 F.3d at 210 (emphasis in original).

As was previously discussed, the record conclusively shows that Parker did not lack knowledge of the facts giving rise to his undisclosed claim, and accordingly, his non-disclosure cannot be inadvertent on this basis.  Here, however, Parker maintains that the third element is not met here because he had no motive to conceal the claims asserted in this lawsuit.

The Court disagrees.  Because Parker knew about his claim, he clearly had a motive to conceal it because his repayment obligations could be substantially alleviated if the bankruptcy court and his creditors were kept unaware of a potentially valuable asset.  <u>See</u> <u>Jethroe</u>, 412 F.3d at 601 (plaintiff-debtor had a motive to conceal the existence of a potential claim where her repayment obligations were reduced on account of non-disclosure); <u>see also</u> <u>De Leon</u>, 321 F.3d at 1292 (inferring motive to conceal because debtor "certainly knew about his claim and . . . because his amount of repayment would be less"); <u>Ryan Operations G.P. v. Santiam-Midwest Lumber Co.</u>, 81 F.3d 355, 363 (3d Cir. 1996)("This combination of knowledge of the claim and

14

motive for concealment in the face of an affirmative duty to disclose gave rise to an inference of intent sufficient to satisfy the requirements of judicial estoppel."). Because the third element is satisfied, Parker is estopped from asserting his previously undisclosed claims, and Turner's motion will therefore be granted.

**CONCLUSION**

Accordingly, for the reasons expressed above, **IT IS ORDERED** that Defendant's Motion for Summary Judgment on the Claims of Calvin Parker is hereby **GRANTED,** and this case is hereby **DISMISSED WITH PREJUDICE.**

New Orleans, Louisiana, this 3rd day of April, 2012.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE